UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWIGHT QUERTERMOUS,

        Plaintiff,                          Case No. 22-cv-10022

vs.                                         HON. MARK A. GOLDSMITH

TARGET CORPORATION,

Defendant.
_____/

**OPINION & ORDER**
**(1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 25)**
**AND (2) DENYING AS MOOT DEFENDANT'S MOTION REGARDING SPOLIATION**
**OF EVIDENCE (Dkt. 24)**

Plaintiff Dwight Quertermous brings a negligence claim after falling inside one of Defendant Target Corporation's stores. Before the Court is Target's motion for summary judgment. For the reasons that follow, the Court grants Target's motion.[1]

**I. BACKGROUND**

Quertermous alleges that, on the morning of August 12, 2021, he visited Target's store located on Gratiot Avenue in Chesterfield, Michigan to pick up his prescription medications. Compl. ¶¶ 1, 5 (Dkt. 1-2). While on the premises, he fell twice. Id. ¶¶ 6–10.

Target has produced a "Guest Incident Report" memorializing events that occurred that day (Dkt. 25-4), and Quertermous testified that he recognized his signature on that document. See

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing includes Quertermous's response (Dkt. 35) and Target's reply (Dkt. 36). Because the Court grants Target's motion for summary judgment, it denies as moot Target's motion to allow reference to Quertermous's spoliation of evidence (Dkt. 24).

Pl. Dep. at 23 (Dkt. 25-3). In response to the question, "What happened?" the report states: "walking down aisle, toe caught floor, fell. Tried to get up & fell again." Incident Report at PageID.582. When asked, "Why did it happen?" the report responds: "shoe stuck on floor, caused left leg to stop, then he fell." Id.

During his deposition, Quertermous expanded on events surrounding his first fall. Asked what the report meant by stating that his "toe caught [the] floor," Quertermous explained, "if my toe caught the floor and my shoe wouldn't move, how do I catch myself?" Pl. Dep. at 28. He continued: "or [his toe] came in contact with something, whether it was caught on the floor or caught on the shelf, the lower shelf. . . . The toe caught, got caught, whether it was on the floor, it caught something. . . . . But my toe was on the floor." Id. When asked if he knew what his toe caught, Quertermous responded, "No, no." Id. at 29.

Quertermous testified that, when he fell, he hit his forehead on the floor. Id. at 30; see also id. at 38–39 (reiterating that his "foot caught something," that he "down [he] went, face first," and that he does not know what his toe caught on).

Quertermous recalls that he then grabbed the shelves next to him to pull himself to his feet. Id. at 30–31. A female employee was "very nice" and asked him if he was "okay," to which he responded, "'I think. I don't know.'" Id.; see also id. at 39 (testifying that he may have answered, "'I don't know. I'm not sure.'"). The employee recommended that he "'go to the coffee shop and have a cup of coffee and try to get [himself] together,'" and Quertermous then walked down a different aisle toward the store's cafeteria. Id. at 31.

Then came the second fall, though Quertermous does not remember the fall itself. He testified:

> I was walking toward the mascara aisle and it seemed like the aisle was closing up.
> . . .

2

> And then I woke up on the floor. I hit the floor and it jarred me and woke me up I guess. I don't recall falling, but there was blood everywhere. . . .
>
> I think I was blacking out. I blacked out. I passed out.

Id. at 40–41. He confirmed that he does not remember what caused him to fall the second time. Id. at 40.

Quertermous also puts forward the testimony of Target's employee Laura Young, who witnessed Quertermous returning to his feet after his first fall. Young Dep. at 12 (Dkt. 35-3). Per Young's testimony, when Young asked if he was okay and offered to call help for him, Quertermous said that he was okay and declined the offer for help. Id. at 12, 18.

As now emphasized by Quertermous, see Br. in Supp. Resp. at 10, Young further testified:

> Immediately after [Quertermous's first] fall with me[,] I went to go speak with [Young's supervisor] Jason and told him about it. As we were walking back towards the area[,] the second fall had already occurred. . . .
>
> I believe [Quertermous] had already walked away [when Young returned to the site of the first fall with Jason]. He had already walked away, I'm certain of that.

Young Dep. at 20–21.

Quertermous then filed suit in Macomb County Circuit Court, not specifying a particular cause of action but rather alleging that Target "owed certain duties to the Plaintiff under the statutes and common law of the State of Michigan and the applicable local ordinances of Chesterfield Township," which Target violated by acting "recklessly, carelessly, wantonly, willfully, and negligently." Compl. ¶ 11. Asserting diversity jurisdiction, Target removed the action to this Court (Dkt. 1) and filed the motion for summary judgment now at issue.

## II. ANALYSIS[2]

Under Michigan law, a premises liability claim is based on the principle that "landowners must act in a reasonable manner to guard against harms that threaten the safety and security of those who enter their land." Hoffner v. Lanctoe, 821 N.W.2d 88, 93 (Mich. 2012). Target correctly cites authorities for the principle that—to prevail on this claim—Quertermous must demonstrate that (i) Target knew or should have known of dangerous conditions existing on its property, and that (ii) Target breached "a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by [those] dangerous conditions on the owner's land." Br. in Supp. Mot. at 13 (quoting Hoffner, 821 N.W.2d at 94).

Quertermous submits that he "could not identify a dangerous condition on the Target premises that would cause liability to fall on Defendant." Br. in Supp. Resp. at 13. Accordingly, he "concedes that there is no legal claim at this time for a premises [liability] action in the instant case." Id. Having abandoned any premises liability claim, Quertermous submits that he has one remaining claim, based in "general negligence." Id.[3]

---

[2] In assessing whether either party is entitled to summary judgment on any claim, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

[3] Because Quertermous has abandoned his premises liability claim, summary judgment to Target is warranted to the extent that Quertermous pleads that his "injury arose from an allegedly dangerous condition on the land," because any such "action sounds in premises liability rather than ordinary negligence." Russell v. Home Depot, Inc., No. 19-12501, 2021 WL 3566333, at *3 (E.D. Mich. Aug. 12, 2021) (granting summary judgment to defendant on negligence claim based on plaintiff's slip and fall occurring on defendant's premises, and assessing claim only under premises liability standard) (quoting Buhalis v. Trinity Continuing Care Servs., 822 N.W.2d 254, 258 (Mich. Ct. App. 2012)). Thus, Quertermous has no surviving claim based on "injuries [that] resulted from the presence of a . . substance on the floor, a prototypical condition on the land . . . ." Smith v.

Quertermous's negligence claim is not based on any breach of duty resulting in his first fall; it is based only on the actions or inactions of Target's employees between his first fall and his second fall. In Quertermous's view, "Quertermous was in a traumatized state of confusion and dizziness following that first fall," which "was witnessed by Target employees," but "[t]hose employees, like Laura Young, then left Mr. Quertermous alone, to his own devices, not bothering to see if he was ok—which he was not—and could be left alone." Br. in Supp. Mot. at 11. On this basis:

> Plaintiff contends that after Mr. Quertermous'[s] first fall on Defendant's property, Defendant was negligent in its care and regard for the safety of Plaintiff while he was in a traumatized state of confusion of [sic] dizziness which ultimately led to Plaintiff's subsequent and more serious fall, causing the injuries alleged. . . .

Id. at 13 (citing Compl. ¶ 11). Quertermous does not recite the elements of a negligence claim or cite a single negligence case in support of his position. See id. at 11–14.

"Under Michigan law, the elements of a negligence cause of action are that (1) the defendant owed a legal duty to the plaintiff, (2) that the defendant breached or violated the legal duty, (3) that the plaintiff suffered damages, and (4) that the breach was a proximate cause of the damages suffered." Weikert v. Delta Air Lines, Inc., No. 20-11277, 2021 WL 5988283, at *6 (E.D. Mich. Oct. 25, 2021) (granting defendant airline's motion for summary judgment on negligence claim based on plaintiff's fall from wheelchair on jet bridge) (citing Schultz v. Consumers Power Co., 506 N.W.2d 175, 177 (Mich. 1993)).

The factual record establishes that Quertermous's claim fails on multiple counts. Quertermous makes no effort to articulate what duty he was owed by Target. "[F]or a duty to arise

---

Wal-Mart Stores E., LP, No. 21-11313, 2022 WL 2960128, at *1 n.1 (E.D. Mich. July 26, 2022) (granting summary judgment to defendant on ordinary negligence claim and applying premises liability analysis) (quoting Russell, 2021 WL 3566333, at *4–*5).

there must exist a sufficient relationship between the plaintiff and the defendant"—that is, "some sort of relationship must exist between the actor and the other party which the law or society views as sufficiently strong to require more than mere observation of the events which unfold on the part of the defendant." Schultz, 506 N.W.2d at 178 (punctuation modified). In Weikart, for example, the court explained that a "duty to use due care arises when an individual undertakes an obligation," and it found that the defendant airline's employees took on a "duty to not unreasonably [en]danger" the plaintiff when they affirmatively "undertook the obligation to assist [plaintiff] out of her wheelchair." 2021 WL 5988283, at *6 (citing Clark v. Dalman, 150 N.W.2d 755, 760 (Mich. 1967) ("This rule of the common law arises out of the concept that every person is under the general duty to so act, or to use that which he controls, as not to injure another.") (punctuation modified)).

The undisputed facts establish that Young asked Quertermous if he was okay after he fell. This action does not indicate that she—never mind Target—affirmatively undertook any obligation giving rise to a duty of care. See Clark, 150 N.W.2d at 760. Without any argument from Quertermous, the Court declines to speculate as to what other theories may nor may not establish a duty in his favor. McPherson v. Kelsey, 125 F.3d 989, 995–996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (punctuation modified).

Nor is there any support in the record for Quertermous's implied position that Target breached such a duty. The standard for this prong requires a showing that the defendant's actions or inactions were "unreasonable." Schultz, 506 N.W.2d at 177. The record viewed in the light most favorable to Quertermous establishes that (i) Young asked him if he was okay after he fell,

6

(ii) he indicated that he thought he was okay but was not sure, (iii) Young advised that he should get some coffee, (iv) Young went to inform her supervisor of Quertermous's fall, and (v) Quertermous fell again.

Even assuming that Quertermous could impute liability to Target for the actions of its employee—which Quertermous does not argue—it is unclear what more Quertermous thinks Young was legally obligated to do. His argument that Young did "not bother[] to see if he was ok," Br. in Supp. Mot. at 11, is contradicted by Quertermous's own testimony, see Pl. Dep. at 30–31, 39. Quertermous emphasizes that Young should have taken greater precautions upon recognizing that he was "in a traumatized state of confusion [and] dizziness." Br. in Supp. Resp. at 13. But the record does not support his assertion that Young thought Quertermous was confused and dizzy; she testified that Quertermous told her he was okay, see Young Dep. at 12, and he testified that he told her he thought he was okay, see Pl. Dep. at 30. After verbally checking on Quertermous, Young immediately went to get more help. Michigan caselaw does not support a finding of negligence in this circumstance. See, e.g., Est. of Cox v. McMahon, No. 303158, 2012 WL 1649755, at *5 (Mich. Ct. App. May 10, 2012) (directing trial court to grant summary judgment to defendants and finding that "there was no evidence that the lifeguards were negligent" where they "allegedly failed to help get [drowning girl] out of pool" because they did not act before other patrons of pool acted to bring girl out of pool).

The material facts are not in dispute. Quertermous has no meritorious negligence claim against Target.

### III. CONCLUSION

For the reasons explained above, the Court grants Target's motion for summary judgment (Dkt. 25) and denies as moot Target's motion to allow reference to Quertermous's spoliation of evidence (Dkt. 24).

SO ORDERED.

Dated: July 27, 2023                       s/Mark A. Goldsmith
    Detroit, Michigan                MARK A. GOLDSMITH
                                           United States District Judge